## SARGENT & Others *v.* HELTON & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ALABAMA.

Argued October 23, 1885.—Decided November 16, 1885.

Where a sale of the lands of a bankrupt estate has been made and confirmed by order of the bankruptcy court, and the lands have been conveyed by the assignee, the Circuit Court of the United States is without jurisdiction at the suit of the purchaser to enjoin a sale of the same lands about to be made upon the order of a State court.

Dana Sargent, one of the appellants, was the sole plaintiff at the commencement of the suit in the Circuit Court. His bill was filed July 10, 1879. It alleged in substance as follows:

The Pensacola Lumber Company, a corporation of the State of New York, was, on February 27, 1875, adjudicated bankrupt by the District Court of the United States for the Southern District of New York, and on the 18th day of May following a deed of assignment of all the property of the bankrupt was executed to the assignee in bankruptcy. The property so conveyed consisted in part of a large body of land in Escambia County, in the State of Alabama. Under a decree of the bankruptcy court, made on December 22, 1875, these lands were sold at public sale on January 5, 1876, in the city of New

York, and were purchased by Dana Sargent, one of the plaintiffs. The sale was confirmed by the court on January 18, 1876, and, Sargent having complied with the terms of sale, on the 25th of the same month, the assignee conveyed the lands to him, and he at once took, and still retained, possession of them. A few days before the Pensacola Lumber Company was adjudicated bankrupt, to wit, on the 18th, 19th, and 22d of February, 1875, all of the defendants respectively, except the sheriff of Escambia County, commenced actions against it · by attachment in the Circuit Court of Escambia County, Alabama, and the writs of attachment were levied on the lands above mentioned of the Pensacola Lumber Company lying in the county of Escambia. More than two years afterwards, to wit, at · the fall term in the year 1878 of the Circuit Court of Escambia County, that court rendered final judgments against the Pensacola Lumber Company in all the attachment suits, and ordered the lands attached to be sold to satisfy the same, in disregard of the fact that the attachments had been dissolved by the adjudication of the defendant as a bankrupt. On June 24, 1879, the · clerk of the Circuit Court of Escambia County issued to the sheriff an order; directing him to advertise and sell the lands attached in obedience to the judgments condemning them to be sold, and the sheriff was about to execute the order.

· The bill alleged that the said order of sale had thrown a cloud upon the title of Sargent to the lands, and had impaired their value; that the execution of the order of sale would still further increase the cloud upon the title, and further depreciate the value of the lands, impair plaintiff's business 'and credit, and inflict an injury, for which he could obtain no satisfaction, owing to the insolvency of the defendants and the insufficiency of the sheriff's bond and estate; and that the lands, consisting of ninety odd sections and parts of sections, would probably, if sold, be bought by many persons, and thus plaintiff would be involved in a multiplicity of suits to vindicate his title.

The bill further alleged that the defendants, other than the sheriff, were general creditors of the bankrupt and parties to the bankrupt proceedings under which the lands were sold and

bought by Sargent. The prayer of the bill was that the sheriff, his agents, and deputies might be enjoined from selling the lands attached.

Before final hearing, by consent of the parties, an amendment was made to the bill, by which Daniel F. Sullivan, who was represented to be the assignee of Dana Sargent, the purchaser of the lands, was made a party plaintiff.

The defendants demurred to the bill on several grounds, among which were that the bill was without equity, and the court without jurisdiction. The Circuit Court made a decree by which the demurrer was sustained and the bill dismissed. From that decree the plaintiffs appealed.

*Mr. Charles E. Mayer* [*Mr. Richard L. Campbell* and *Mr. Lewis Abraham* were with him on the brief] for appellants.

*Mr. H. A. Herbert* for appellees.

Mr. Justice Woods delivered the opinion of the court. He stated the facts in the language above reported, and continued:

Section 720 of the Revised Statutes of the United States provides "that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The sole purpose of the bill in this case was to restrain the execution of an order of the Circuit Court for the county of Escambia, a court of the State of Alabama, and no relief which, upon the averments of the bill, this court could grant would be effectual without the writ of injunction prayed for. The Circuit Court of the United States was, therefore, deprived of power, by the section just quoted, to protect the rights of the plaintiff, unless the writ of injunction was authorized by the law relating to proceedings in bankruptcy. *Haines* v. *Carpenter*, 91 U. S. 254; *Dial* v. *Reynolds*, 96 U. S. 340. In a timely suit brought by the assignee in bankruptcy, there is no doubt that, upon a proper showing, the Circuit Court might have enjoined proceedings in the attachment suits in the State

court. This is the express ruling in *Chapman* v. *Brewer*, 114 U. S. 158. But the plaintiff in this case is not the assignee in bankruptcy. Sullivan, the transferee of Sargent, the vendee at the bankruptcy sale, was the real plaintiff and the only party who, at the final hearing, asked for the injunction. The question, therefore, is, does any law relating to proceedings in bankruptcy authorize an injunction at the instance of a purchaser of property at a bankruptcy sale, or his vendee, to stay proceedings in a State court?

There is no act of Congress expressly authorizing a Circuit Court of the United States to restrain by injunction, even at the suit of an assignee in bankruptcy, proceedings in a State court. The case of *Chapman* v. *Brewer, ubi supra,* was a bill in equity filed by an assignee in bankruptcy to enjoin the defendant from selling the property of the bankrupt upon execution issued out of the State court. The jurisdiction to issue the writ in that case was placed by the court upon § 5024 Rev. Stat., which authorized the District Court, sitting in bankruptcy, when a petition in involuntary bankruptcy had been filed, to restrain by injunction all persons from interfering with the debtor's property; and upon § 4979, which gives the Circuit Court concurrent jurisdiction with the District Courts of all suits at law or in equity brought by an assignee in bankruptcy against any person claiming an adverse interest in any property transferable to or vested in him. The court, in the case cited, said : "It must be held that Congress, in authorizing a suit in equity in a case like the present, has, in order to make the other relief granted completely effective, authorized an injunction as necessarily incidental and consequent to prevent further proceedings under the levies already made and new levies under the judgment." The case makes it clear that the injunction to stay proceedings in a State court is only allowed by the statute for the purpose of aiding the assignee in bankruptcy to discharge his duty and of protecting the property of the bankrupt estate for the equitable distribution among the creditors. But there is no act of Congress from which can be inferred authority to a court of the United States to issue an injunction to restrain proceedings of a State court,

at the instance of a purchaser at bankruptcy sale, or of his vendee.

The right of the assignee in bankruptcy, by § 5057 Rev. Stat., to maintain any suit touching any property or rights of property transferable to or vested in him against any person claiming an adverse interest, is cut off by § 5057 Rev. Stat. by the lapse of two years from the time the cause of action accrued.

But the contention of the plaintiff in this case is that the bankruptcy act, without limitation of time, allows a purchaser at a bankruptcy sale, or his vendee, to sue out a writ of injunction from a Federal court to restrain proceedings in a State court, while it denies that right to all other persons, except the assignee in bankruptcy, and allows it to him only for two years after his cause of action has accrued.

The argument against the jurisdiction in this case is clear. The suit was not brought until long after the lands in controversy had been sold and conveyed by the assignee, and the purchaser had been put in possession. Neither the assignee nor the creditors of the bankrupt estate had any further interest in or concern with them. They had been fully administered, the purchase money had been paid to the assignee, and the lands no longer formed any part of the assets of the bankrupt estate, and no proceedings in the bankruptcy court could have any reference to them. There is, therefore, no law relating to proceedings in bankruptcy which authorizes the injunction prayed for.

The case of *Dietzsch* v. *Huidekoper*, 103 U. S. 494, cited by counsel for plaintiff, merely decided that a court of the United States could enforce its own judgment in a replevin suit removed from a State court, by enjoining the defeated parties from proceeding on the replevin bond in the court from which the cause had been removed, the condition of the bond having been satisfied by the judgment of the Federal court in favor of the obligor. The court further held that the bill filed for the purpose of restraining the defendant was merely ancillary to the replevin suit, its object being to secure to the defendant therein the fruits of his judgment. The authority cited does not tend to sustain the jurisdiction of the court in this case.

*Decree affirmed.*